UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN VOGENBERGER, on his own
behalf and all similarly situated
individuals,

       Plaintiff,

v.                                  Case No: 2:14-cv-436-FtM-29CM

ATC FITNESS CAPE CORAL,
LLC, ATC FITNESS FORT
MYERS, LLC, ATC FITNESS
FORT MYERS 2, LLC and 3F
MANAGEMENT, LLC,

       Defendants.

## REPORT AND RECOMMENDATION[1]

Before the Court is the parties' Second *Joint* Motion for Approval of Settlement and Incorporated Memorandum of Law ("Motion") (Doc. 37).[2] The parties again seek approval of the agreement, authorization for the distribution of the proposed Class Notice of Settlement and dismissal of the case with prejudice. Doc. 37 at 10-11. For the reasons that follow, the undersigned recommends that the Motion be granted, the

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. **In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation they promptly may file a joint notice of no objection.**

[2] The parties' first motion for settlement approval was denied without prejudice because the parties failed to state that attorneys' fees were negotiated separately or offer a basis upon which the Court may approve an incentive payment to named Plaintiff Kevin Vogenberger, and thus the Court determined it could not approve the settlement as fair and reasonable. *See* Doc. 36.

settlement be approved, the Class Notice of Settlement be authorized for distribution and this case be dismissed with prejudice.

## I. Background

Plaintiff Kevin Vogenberger brought this claim for failure to pay overtime and minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, seeking recovery of unpaid overtime and minimum wage compensation, liquidated damages and reasonable attorney's fees and costs arising out of his employment as a sales employee[3] of Defendants. Doc. 1. Four other putative Plaintiffs, Michael Alessi, Terrance Ford, Jennifer Holt and Maribel Santos, filed notices of consent to join, but Jennifer Holt since has filed a notice of withdrawal of her consent. Docs. 9, 10, 22, 29, 35.

The Motion states that the parties "voluntarily agreed to the terms of their settlement at the conclusion of the negotiations, and after a full-day mediation presided over by experienced wage and hour attorney and mediator, Mark Hanley of Glenn Rasmussen, P.A. in Tampa, Florida." Doc. 37 at 4. Under the terms of the Settlement Agreement, Defendant has agreed to settle all potential Plaintiffs' claims for a total common fund of $155,000.00, which represents $102,000.00 for payments to the class; $51,000.00 for attorney's fees and administrative, taxable and class administration costs; and $2,000.00 for an incentive payment to named Plaintiff

---

[3] The Class, as defined in the Settlement Agreement, "means the collective group of those individuals who were employed by ATC as Membership Advisor for the period of January 2013 through December 2014. . . ." Doc. 34-1 at 2. The proposed Notice, however, is addressed to "inside sales representatives." Doc. 34-2 at 2. Thus, it is not entirely clear whether these are the same, or different, positions.

Kevin Vogenberger in recognition of his work on behalf of the class. Doc. 37 at 6-7; Doc. 37-2 at 6-7.

## II. Analysis

To approve the settlement, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). There are two ways for a claim under the FLSA to be settled or compromised. *Id.* at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id.* at 1353. The second is under 29 U.S.C. § 216(b), when an action is brought by employees against their employer to recover back wages. *Id.* When the employees file suit, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable. *Id.* at 1353-54.

The Eleventh Circuit has found settlements permissible when the lawsuit is brought by employees under the FLSA for back wages because the lawsuit

> provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

### a. *The common fund amount*

With respect to the $102,000.00 payable to the class, each member who opts-in will be paid according to the following formula:

> The Settlement Fund shall be divided by the total number of work weeks (or parts thereof) worked by all individuals employed in the Class Position at any time during the Class Period, resulting in a damages amount for each work week ("Per Week Amount"). Each Participating Claimant is entitled to receive the Per Week Amount for each work week (or parts thereof) he or she was employed in the Class Position during the Class Period.

Doc. 37 at 7.

The Settlement Agreement contemplates that each potential opt-in Plaintiff will receive a settlement notice, a proposed version of which is filed as Doc. 37-3. According to the Settlement Agreement, the notice will state that for every week the opt-in Plaintiff worked for ATC, he or she will receive approximately $241.13 in compensation for ATC's alleged violations of the FLSA, based upon a two year statute of limitations. Doc. 37-2 at 7. The Settlement Agreement further contemplates that class members who elect not to join will not be bound by the terms of the settlement and may proceed individually on their claims if they choose to do so. *Id.* To the extent that the settlement fund is not exhausted, any remaining money reverts back to ATC. *Id.*

The Settlement Agreement also states that notice to the potential opt-in class will commence with ATC providing to Class Counsel the names and last known addresses of all class members and potential class members for the sole purpose of effectuating notice within fifteen (15) days of approval of the Settlement Agreement

by the Court. *Id.* at 8.  Kevin Vogenberger, as signatory on his own behalf and on behalf of all others similarly situated, also is deemed to have released all wage and hour claims and ATC agreed to release Vogenberger with respect to any causes of action arising out of this litigation.[4]  *Id.* at 10.

The parties state that they recognize the inherent risks in litigation and neither party was willing to accept those risks.  Doc. 37 at 5.  Accordingly, "Defendants have agreed to pay Plaintiffs substantially all of the overtime that they claimed was due to them, as well as an equal amount as liquidated damages."  *Id.*  The parties have identified a specific, detailed formula to be applied in calculating the amount due to each opt-in Plaintiff, as set forth above.  The Court finds this method of calculation to be reasonable.

### b. *Attorneys' fees and costs*

Under the terms of the Settlement Agreement, Defendants have agreed pay a total of $51,000.00 for attorneys' fees and administrative, taxable and class administration costs, which represents 33% of the total common fund.  Doc. 37 at 6, 10; Doc. 37-2 at 6-7.

In *Camden I Condominium Association, Inc. v. Dunkle*, the Eleventh Circuit expressly endorsed attorneys' fees awards calculated as a percentage of a common fund:

> [W]e believe that the percentage of the fund approach is
> the better reasoned in a common fund case.  Henceforth in
> this circuit, attorneys' fees awarded from a common fund

---

[4] Specifically, Vogenberger agreed to release all "Released Claims," as that term is defined in the Settlement Agreement.  *See* Doc. 37-2 at 3-4.

> shall be based upon a reasonable percentage of the fund established for the benefit of the class.

946 F.2d 768, 774 (11th Cir. 1991). The Court explained that "[t]he majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* Although courts generally use 25% fees as a "bench mark" for determining what percentage of the common fund is reasonable, courts also should consider the individual circumstances of each case when determining reasonableness, and articulate specific reasons for determining the appropriate percentage for the fee award. *Id.* at 775.

Accordingly, "[a]ttorneys in class litigation are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Lytle v. Lowe's Home Centers, Inc.*, No. 8:12-cv-1848-T-33TBM, 2014 WL 6469428, at *2 (M.D. Fla. Nov. 17, 2014) (citing *Camden I Condo. Ass'n, Inc.*, 946 F.2d 768 at 771). Factors for the Court's consideration regarding whether a particular percentage may be approved as reasonable include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Stahl v. MasTec, Inc.*, No. 8:05-cv-1265-T-27TGW, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008) (citing *Boeing Co. v. VanGemert, et al.*, 444 U.S. 472, 480-81 (1980),

and *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999)).

Here, the parties agree that 33% is a reasonable percentage for attorneys' fees and costs. Doc. 37 at 8. The parties state this amount is reasonable because "Plaintiffs' counsel has extensive experience litigating FLSA collective actions and the results in this matter warrant such an amount, given Defendants' vigorous defense and the exceptional results obtained on behalf of Plaintiffs." *Id.* In further support of the reasonableness of the 33% fee, the parties state that "Plaintiffs' counsel was required to locate and interview numerous witnesses, discussed the facts of the case with each of the opt-ins, and undertook substantial research to prove this case." *Id.* at 10. The undersigned also finds the 33% fee here to be in line with those awarded by other courts in this district. *See Lytle*, 2014 WL 6469428, at *3 (collecting cases from the Middle District of Florida in which attorneys' fees representing approximately 30% of a common fund were approved). Therefore, upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement, the undersigned concludes that the 33% fee here is reasonable.

Pursuant to *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no

> reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.

715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009). Although the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face. *Bodnar v. Gourmet Hut, Inc.*, No. 3:13-cv-709-J-34JRK, 2014 WL 757981, at *3 n.4 (M.D. Fla. Feb. 26, 2014) (order adopting report and recommendation). Here, the parties represent that they "resolved the issues of attorneys' fees and costs separately from the issue of the Plaintiffs' underlying damages." Doc. 37 at 1-2. Accordingly, because the fee award in this case appears reasonable, the Court need not conduct a more in-depth review. *Bonetti*, 715 F.Supp.2d at 1228.

### c. *Incentive payment to named Plaintiff*

With respect to the incentive payment to Plaintiff Kevin Vogenberger, the Court notes that the FLSA does not provide for a representative plaintiff. *Heath v. Hard Rock Cafe Intern. (STP), Inc.*, No. 6:10-cv-644-Orl-28KRS, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011). Thus, "generally no incentive payment to a named Plaintiff in an FLSA collective action is warranted." *Id.* Where the named Plaintiff can establish that he faced substantial risk by participating in the lawsuit and incurred actual expenses, however, Courts have awarded incentive fees in FLSA cases. *Id.* at *5.

Attached to the Motion is a Declaration of Kevin Vogenberger in Support of Incentive Payment that details the time he spent prosecuting this claim on behalf of himself and the class, and setting forth what he perceives to be the adverse risks of

serving as the named Plaintiff. Doc. 37-1. Specifically, Mr. Vogenberger highlights the risk that future employers, upon a proper search, may learn that he sued a former employer, and also notes that Defendants filed a counterclaim against him after he initiated the instant action, which could have subject him to financial loss. Doc. 37-1 at 2, 4. Mr. Vogenberger also states that he "remained actively engaged in aiding and assisting the prosecution of the case" even after the filing of the Complaint, namely by providing detailed information in support of the claims and attending mediation. *Id.* at 3-4. Moreover, Mr. Vogenberger asserts that the time he spent working with counsel on this matter "dwarfed the amount of time any other opt-in Plaintiff or potential opt-in Plaintiff spent working on behalf of the collective salespeople . . . ." *Id.* at 4. Accordingly, the Court finds that a $2,000.00 incentive payment in recognition of the work detailed in the Declaration is reasonable.

### III. Conclusion

The undersigned, having reviewed the terms of the settlement as set forth in the Settlement Agreement (Doc. 37-2), concludes that the settlement appears to be a fair and reasonable resolution of a bona fide dispute under the FLSA.

ACCORDINGLY, it is hereby

**RECOMMENDED:**

1. That the Second *Joint* Motion for Approval of Settlement and Incorporated Memorandum of Law ("Motion") (Doc. 37) be **GRANTED** and the settlement be **APPROVED**;

      2.    That the Court authorize distribution of the proposed Class Notice, as detailed in the Settlement Agreement; and

      3.    That the Court enter an Order adopting the Report and Recommendation and dismissing the case with prejudice.

**DONE** and **ENTERED** in Fort Myers, Florida on this 15th day of April, 2015.

*/s/ Carol Mirando*
CAROL MIRANDO
United States Magistrate Judge

Copies:
The Honorable John E. Steele
Counsel of record